134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kurt Eric MOORE, Defendant,-Appellant.
 No. 97-2134.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 12, 1997.
Decided Jan. 13, 1998.
 
 ESCHBACK, COFFEY, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 After a jury trial, Kurt Moore was convicted of possession with the intent to distribute cocaine and cocaine base, 21 U.S.C. § 841(a)(l), and carrying a firearm during and in relation to the commission of a drug trafficking crime, 18 U.S.C. § 924(c). Moore argues on appeal that the prosecutor made improper remarks during his closing argument, which constituted plain error and deprived Moore of his right to a fair trial. Specifically, Moore argues that the prosecutor misstated the law, improperly commented regarding the burden of proof, and improperly commented on the credibility of Moore and the government witnesses. Because the prosecutor's comments did not deprive Moore of a fair trial, we affirm Moore's conviction.
 
 
 2
 On September 14, 1996, Officers Krider and Trythall observed Moore driving 56 miles per hour in a 50-mile-per-hour speed zone. When the officers, each in his own marked car, attempted to stop Moore, Moore turned into an apartment complex and attempted to outrun the police cars. Moore then jumped out of the car and a foot chase ensued. Officer Trythall testified that as Moore exited the car, Moore reached under the seat and grabbed a yellow and black plastic bag. Officer Trythall lost sight of Moore for several seconds as Moore turned the comer of an apartment building. When Officer Trythall saw Moore again, he was no longer carrying the bag. Officer Krider testified that he did not see Moore grab anything as he left the car, nor did he see Moore carrying a bag as he was pursuing him.
 
 
 3
 Moore eventually was apprehended by two law enforcement officers who had responded to Officer Trythall's call for back-up. Moore informed the officers that he was in possession of a gun. The officers also found in Moore's possession $2,196.00 in United States currency and a digital pager. Upon conducting a search of the vehicle Moore was driving, the officers also recovered two cellular phones.
 
 
 4
 After Moore was in custody, Officer Trythall retraced the route of the foot chase and discovered a yellow and black plastic bag in the bushes next to the apartment building where he initially lost sight of Moore during the foot chase. Officer Trythall opened the bag and saw a store receipt from a "Man Alive" clothing store and smaller bags of what he believed to be cocaine and cocaine base. Later testing revealed that the smaller bags contained a total of approximately 614 grams of cocaine and approximately 65 grams of crack cocaine. The store receipt in the bag was dated September 13, 1996 and reflected the purchase of a multi-colored Karl Kani shirt, size 2XL. At the time of his arrest, Moore was wearing a multi-colored Karl Kani shirt, size 2XL, and the former assistant manager of the store which issued the receipt identified Moore as the person who had purchased the Karl Kani shirt.
 
 
 5
 Moore's testimony at trial conflicted with some of the testimony of the government witnesses. Moore testified that at the time the police attempted to pull him over, he was on his way to pay a $2,200 overdue cellular phone bill in his former girlfriend's name. He was taking the two deactivated cellular phones with him in an attempt to obtain a credit on the bill. Moore testified that he never possessed the yellow and black plastic bag or any drugs. Moore admitted he wore a multi-colored Karl Kani shirt, size 2XL, at the time of his arrest, but he denied purchasing the shirt from the Man Alive store. Instead, Moore alleged he bought the shirt from his friend's sister, who had purchased it from a T.J. Maxx store. Moore also explained that he panicked when he saw the police because he thought his driver's license was suspended and because he was carrying a gun Moore also was afraid the police would seize his cash and he would be unable to pay the phone bill because he claims that the police previously had seized cash from him without justification. As he was running, Moore calmed down and decided to surrender.
 
 
 6
 During closing argument, the prosecutor made several remarks which Moore now claims were improper and warrant the reversal of his conviction. Because Moore did not object to the prosecutor's remarks at trial, we review the remarks for plain error affecting substantial rights. See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. Laurenzana, 113 F.3d 689, 695 (7th Cir.), cert. denied, 118 S.Ct. 240 (1997). In analyzing Moore's claim, we first consider whether the comments were improper and then evaluate the comments to determine whether they deprived Moore of a fair trial. Laurenzna, 113 F.3d at 695.
 
 
 7
 Moore argues that the prosecutor improperly expressed his opinion about Moore's credibility and improperly commented on the burden of proof with the following remarks:
 
 
 8
 I don't think there is any question that the story that he told you is not accurate. I don't even think it's truthful. And I think that you as a jury, and you as individuals, not only based upon your common sense but upon your everyday experiences, are going to have to make a determination in this case as to who is telling the truth and who is lying And I think that that's fairly clear and straightforward here because you would have to disbelieve every single witness that the Government presented to you, and believe every single thing that the defendant testified to in order for you to find that the Government has not met its burden in this case. And I don't think that's the facts, and I don't think you're going to see them as the facts.
 
 
 9
 Moore claims that this statement distorted the burden of proof by improperly implying that the jury had to find that the government witnesses were lying in order to find Moore not guilty.
 
 
 10
 Both parties compare the prosecutor's statements to statements found in be improper in United States v. Vargas, 583 F 2d 380 (7th Cir.1978) and United States v. Phillips, 527 F.2d 1021 (7th Cir.1975). In Vargas, the prosecutor told the jury that either they had to conclude that all of the government witnesses were lying in order to find the defendant not guilty, or they could find the defendant guilty. Vargas, 583 F.2d at 387. This court found that the prosecutor misstated the law and that telling the jurors that they had to chose between the stories was error. Id. Similarly, in Phillips, the prosecutor misstated the law by leading the jury to believe it had to find that the prosecutor and the government witness conspired to violate the defendant's civil rights in order to find the defendant not guilty. Phillips, 527 F.2d at 1023.
 
 
 11
 This court has recently held that similar comments were proper where the prosecutor did not misstate the law. See United States v. Marshall, 75 F.3d 1097, 1108 (7th Cir.1996); United States v. Hernandez, 865 F.2d 925, 929 (7th Cir.1989). It is proper for a prosecutor to tell the jury to find the defendant not guilty if they believe the government witness lying. Hernandez, 865 F.2d at 929. However, the prosecutor may not state that this is the only way to find the defendant not guilty. Id.
 
 
 12
 The comments to which Moore objects, when viewed in isolation, misstate the law. The prosecutor specifically stated that in order for the jury to find that the government had not met its burden, they would have to disbelieve every single government witness and believe every single thing to which Moore testified Even if the jury believed the government witnesses and disbelieved Moore, the jury could have found that the government failed to produce sufficient evidence to prove Moore guilty beyond a reasonable doubt. See Vargas, 583 F.2d at 387.
 
 
 13
 Moore also argues that the prosecutor improperly vouched for the credibility of the government's witnesses by specifically referencing the testimony of the witnesses and stating that these witnesses had no motivation to lie. A prosecutor may remark on the witnesses' credibility "as long as the comment reflects reasonable inferences from the evidence adduced at trial," but a prosecutor may not give a personal opinion regarding the credibility of the witnesses. United States v. Morgan, 113 F.3d 85, 89 (7th Cir.1997) (quoting United States v. Goodapple, 958 F.2d 1402, 1409-10 (7th Cir.1992)). Where a defendant's version of the facts conflicts with that of the government witnesses', a prosecutor may argue that the jury should believe the government witness and not the defendant. United States v. Catalfo, 64 F.3d 1070, 1080 (7th Cir.1995), cert. denied, 116 S.Ct. 1683 (1996).
 
 
 14
 Here, the prosecutor's comments constituted improper vouching for the credibility of the government witnesses. See United States v. Swiatek, 819 F.2d 721, 731 (7th Cir.1987). The prosecutor's comments regarding the witnesses' motivation could not be reasonably inferred from the evidence.
 
 
 15
 The prosecutor's remarks, however, did not deprive Moore of a fair trial or result in a miscarriage of justice. Laurenzana, 113 F.3d at 695. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.... The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Morgan, 113 F3d at 89 (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)) (internal quotations omitted). To determine whether Moore's conviction was a denial of due process, we consider the following criteria: 1) the nature and seriousness of the statements; 2) whether the statements were invited by impermissible conduct of defense counsel; 3) whether the district court instructed the jury to disregard the statements; 4) whether the defense was able to counter the improper statements through rebuttal; and 5) the weight of the evidence against the defendant. Morgan, 113 F.3d at 90 (citations omitted).
 
 
 16
 The prosecutor's remarks were improper but not inflammatory. See Morgan, 113 F.3d at 90-91 (comparing Darden, 477 U.S. at 180 n. 12, in which the Supreme Court held that there was no due process violation based on the prosecutor's remark that "I wish that I could see [the defendant] sitting here with no face, blown away by a shotgun."). Moreover, the prosecutor's comments were not serious in light of the entire closing argument. The prosecutor informed the jury that it should find Moore not guilty if it found that the government failed to prove any of the elements of the charges beyond a reasonable doubt Immediately preceding the objectionable comments, the prosecutor stated
 
 
 17
 The defendant was not required to produce or do anything in this case because the burden is on the Government and remains on the Government throughout this case. And we think we've not only overcome that burden, we think we've established by this evidence and the testimony and the exhibits you've got far beyond a reasonable doubt that he committed the crimes that he's charged with.
 
 
 18
 The government argues that its statements were invited by Moore's testimony in which he stated that the testimony of the police officers was inaccurate. Moore argues, on the other hand, that his only statement regarding the accuracy of the officers' testimony concerned the officers' mistake regarding the location of the foot chase. Because Moore did not challenge the credibility of the government witnesses further, the prosecutor's remarks on the credibility of all of the government witnesses went too far and were not invited by Moore's testimony. The prosecutor "went beyond 'right[ing] the scale." ' Morgan, 113 F.3d at 90 (quoting United States v. Young, 470 U.S. 1, 13 (1985)).
 
 
 19
 However, in the jury instructions, the district court directed the jury to disregard the closing arguments "to the extent they are not supported by the evidence." This court ordinarily presumes that any error is corrected by the district court's instruction that the attorneys' statements should be disregarded to the extent they are not supported by the evidence. Catalfo, 64 F.3d at 1081; see also Morgan, 113 F.3d at 91.
 
 
 20
 Moreover, Moore also had the opportunity to counter the prosecutor's remarks but failed to do so. The prosecutor made the challenged statements during its initial closing argument. Not only did Moore fail to object to the prosecutor's remarks, but Moore also failed to respond to the remarks in his own closing statement.
 
 
 21
 Finally, the weight of the evidence is against Moore. Even if the jury did not believe all of Officer Trythall's testimony, the circumstantial evidence in this case is compelling. Morgan, 113 F.3d at 91. Moore fled from the police when they attempted to pull him over for a traffic violation. Moore was convicted of possessing drugs in a bag containing a store receipt for the same shirt he was wearing when he was arrested, and Moore was identified by the store employee as the person who had purchased the shirt. Officer Trythall testified that he found the bag behind the apartment where Moore's former girlfriend lived, and there is evidence in the record that Moore tried to get her attention when he was led to the police car. Finally, a police officer, who was in the police car with Moore after he was apprehended, testified that Moore uttered an expletive and appeared dejected when he heard the bag had been found.
 
 
 22
 Based on our evaluation of the relevant criteria, we find Moore's conviction was not a denial of due process. The prosecutor's comments did not render the trial unfair and there is no constitutional error. United States v. Whitaker, 127 F.3d 595, 606 (7th Cir.1997). We therefore AFFIRM Moore's conviction.